**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| REBECCA DELANEY, *as personal representative of the Estate of Justin Nicholas Miller*, ) ) ) ) | |
| Plaintiff, ) ) | No. 9:14-cv-3421-DCN |
| v. ) ) | **ORDER** |
| THE UNITED STATES OF AMERICA ) ) | |
| Defendants. ) ) | |

This matter is before the court on a motion to dismiss for lack of subject matter jurisdiction filed by the government.[1] For the reasons set forth below, the court grants in part and denies in part the government's motion.

## I. BACKGROUND

On February 24, 2012, Kalvin Hunt ("Hunt"), a Marine on involuntary leave while appealing his dishonorable discharge, was accompanied to the Beaufort Naval Hospital ("the naval hospital") by Edward Ray ("Ray"), an employee of the Beaufort County Office of Veteran's Affairs.[2] When Hunt and Ray arrived at the naval hospital, Nurse Saundra Smith ("Smith") came to offer assistance and meet with Hunt. While Smith was in the process of interviewing Hunt and scheduling an appointment for him to see a doctor the following Monday, Hunt began to rock back and forth in his chair and let

---

[1] The government also moved to dismiss for failure to state a claim in the same motion. That portion of the government's motion is addressed in the conclusion of this order.

[2] Ray is now deceased.

1

out an exasperated kind of moan.  When Smith asked Hunt if he wanted to hurt himself, he said that he did.  At that time, Smith took Hunt and Ray to the emergency department.

Once in the emergency department, Hunt first saw triage nurse Janice McDonald ("Janice").  When Janice asked Hunt whether he had thoughts about hurting himself, he responded that he did, although he had no plan to hurt himself at that time.  Janice informed Hunt that he would be evaluated by a psychiatrist and, depending on her judgment, a decision would be made whether to admit him.  Janice turned Hunt over to her husband Joe McDonald ("Joe"), who is also a registered nurse in the emergency department.  Joe accompanied Hunt to be evaluated by Dr. Christian Jansen ("Dr. Jansen").  Dr. Jansen noted that Hunt had suicidal thoughts and thoughts of hurting others, but no specific plans.  At that time, Dr. Jansen called for a psychiatric technician from the naval hospital's mental health unit to evaluate Hunt.

Arthur Manning ("Manning"), a psychiatric technician, evaluated Hunt and recommended that Hunt be admitted.  The on-duty psychiatrist, Dr. Beverly Hendelman ("Dr. Hendelman"), accepted the recommendation and made the decision to hospitalize Hunt.  Dr. Hendelman then relayed her decision to Dr. Jansen.  The plan was to admit Hunt to nearby Beaufort Memorial Hospital because the naval hospital did not provide in-patient mental health treatment.

About the time that Dr. Jansen was in the process of determining bed availability at Beaufort Memorial, Ray asked Joe if he and Hunt could go outside for some fresh air, and Joe said that they could.  Once outside, Hunt removed some items of clothing and ran towards the front gate.  A security guard saw Hunt running but did not stop him.  Ray attempted to pursue Hunt, but was unable to catch him.  Ray approached the front gate

and described the events that had just occurred to a group of security guards. A security guard called the Beaufort County Sheriff's Department to report the incident.

At the same time, the Town of Port Royal Fire Department was responding to an emergency call at a nearby apartment complex. Hunt got into the still-running and unattended fire truck and began driving it down Ribaut Road at high speed. Hunt collided with many cars and struck and killed pedestrian Justin Miller.

On August 22, 2014, plaintiff Rebecca Delaney ("Delaney") filed this suit as personal representative of Justin Miller's estate. Delaney alleges causes of action against the government for negligence.[3] On December 17, 2014, the government filed a motion to dismiss. Delaney responded on February 13, 2015, and the government filed a reply on February 23, 2015. This matter has been fully briefed and is ripe for the court's review.

## II. STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for "lack of subject-matter jurisdiction." The determination of subject matter jurisdiction must be made at the outset before any determination on the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998). "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). If the plaintiff cannot overcome this burden, the claim must be dismissed. Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). In ruling

---

[3] Delaney's complaint names the United States Naval Hospital as a defendant. However, federal agencies cannot be sued under the Federal Torts Claims Act. See Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms, 807 F. Supp. 2d 362, 369 (D. Md. 2011); 28 U.S.C. § 2679. Therefore, the court substitutes the United States as the defendant for all causes of action asserted against the United States Naval Hospital.

on a Rule 12(b)(1) motion, "the court may consider exhibits outside the pleadings" and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Williams, 50 F.3d at 304 (internal citations and quotations omitted).

### III. DISCUSSION

The government moves to dismiss plaintiffs' claims against it for lack of subject matter jurisdiction pursuant Rule 12(b)(1).[4] The government contends that the plaintiffs' claims are barred by the doctrine of sovereign immunity. Gov't's Mot. 8. Additionally, the government argues that Delaney has failed to exhaust administrative remedies with regard to some claims.

#### A.     Sovereign Immunity

The government contends that the claims against it should be dismissed because they are barred by the doctrine of sovereign immunity. Def.'s Mot. 8.

It is well settled that the United States, as a sovereign, is immune from suit except to the extent that it has consented to be sued. Frahm v. United States, 492 F.3d 258, 262 (4th Cir. 2007) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. FDIC v. Myer, 510 U.S. 471, 475 (1994). Sovereign immunity is jurisdictional in nature and the terms of the government's consent to be sued in any court define that court's jurisdiction to entertain suit. Meyer, 510 U.S. at 475.

---

[4] The government filed an answer shortly after Delaney filed the present action and did not file the present motion until sometime later. Rule 12(b) provides that motions filed pursuant to that subsection "must be made before pleading if a responsive pleading is allowed." Therefore, the government's motion is untimely as filed. Nonetheless, the court will consider the government's motion under Federal Rule of Civil Procedure 12(h)(3), which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

4

A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969).  Waivers must be construed strictly in favor of the sovereign and may not be enlarged beyond what the statutory language requires.  Ruckelshaus v. Sierra Club, 463 U.S. 680, 685–86 (1983).  "[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists." Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005)

> The Federal Tort Claims Act ("FTCA") provides that district courts have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  The FTCA, therefore, provides for a limited waiver of the United States' sovereign immunity, but this waiver restricts liability to acts or omissions of agents or employees of the United States.  "Congress has not waived the sovereign immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government."  Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996).

The government contends that the court lacks subject matter jurisdiction over Delaney's claims because:  (1) the alleged negligent acts were not performed by employees of the United States within the meaning of the FTCA; and (2) the FTCA does not waive sovereign immunity based on the exercise of a discretionary function.  The court will consider each of these arguments in turn.

### 1.     Employees of the United States

The government first argues that Dr. Jansen, Joe, and Janice—all of whom worked in the emergency department at the hospital during the incident in question—are not federal employees within the meaning of the FTCA. Gov't's Mot. 11.

In response, Delaney does not focus on Dr. Jansen, Joe, and Janice. At the hearing, Delaney asserted that she was not seeking to hold the government liable for the actions of Dr. Jansen, Joe, or Janice in their individual capacities. Rather, Delaney focuses on the negligence of five employees who are indisputably government employees: Smith; Manning; Dr. Handelman; Ricardo Williams ("Williams"), a Master of Arms who was standing post at the naval hospital gate when he observed Hunt running out of the base; and Nicholas Merced ("Merced"), Williams's supervising non-commissioned officer. Pl.'s Resp. 7–9. The United States is clearly liable for the negligence of these five individuals under the FTCA.

The court denies the government's motion to dismiss to the extent it asserts that the alleged negligent acts were not performed by employees of the United States.

### 2.     Discretionary Function Exception

The government also argues that the court lacks subject matter jurisdiction over some of plaintiffs' claims because of the discretionary function exception to sovereign immunity. Gov't's Mot. 15–16. The government only advances this argument with respect to "(1) claims relating to Hunt leaving the Base without inquiry and that the sentries and security personnel failed to follow policies and procedures in place, and failed to implement adequate training, supervision, safety procedures and policies; and

(2) claims that the United States negligently contracted with CasePro, Inc. to provide qualified healthcare workers." Id. at 16.

Title 28 U.S.C. § 2680 sets forth exceptions to the FTCA's waiver of sovereign immunity. One such exception provides that the FTCA does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Varig Airlines, 467 U.S. 797, 814 (1984). It "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Id. at 808.

Courts follow a two-step analysis to identify protected discretionary functions in FTCA actions. First, the exception covers only acts that "involv[e] an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)) (alteration in original). "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Id. (citation and internal citation marks omitted). Even if the challenged conduct involves an element of judgment, it must also be determined "whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. at 322–23. At this second

prong, the court must determine whether the governmental action was "based on considerations of public policy." Id. at 323. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325. Plaintiffs bear the burden of proving that the discretionary function exemption does not apply. LeRose v. United States, 285 F. App'x 93, 96 (4th Cir. 2008).

The government's motion is not the model of clarity when it comes to what actions they allege fall within the discretionary function exemption. To the extent plaintiffs allege that the government was negligent by failing to "implement adequate training, supervision, safety procedures and policies," Gov't's Mot. 16, the court agrees with the government that the decision to promulgate certain procedures falls within the discretionary function exemption because such a decision involves judgment and is susceptible to a policy analysis. See Zielinski v. United States, 89 F.3d 831, *3 (4th Cir. 1996) (table decision) (recognizing that "extent and manner of base security measures in general fell within the discretionary function exception" and finding that the decision to what extent a base should be open or closed is within the commander's discretion). However, plaintiffs' allegation that naval hospital employees failed to comply with existing policies and procedures does not fall within the discretionary function exemption. See Gaubert, 499 U.S. at 322 ("The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." (emphasis added)).

8

Moreover, to the extent Delaney alleges that the government was negligent in contracting with CasePro to provide healthcare services, that claim is also barred by the discretionary function exception. See Williams, 50 F.3d at 310 ("The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy, and the case law clearly establishes that the award of contracts falls within the ambit of the discretionary function exception."); Fullmer, ex rel. Fullmer v. United States, 166 F.3d 1220 (10th Cir. 1999) (finding that government's staffing decisions at a military clinic were subject to the discretionary function exception).

Therefore, the court grants the government's motion to dismiss to the extent Delaney alleges that the government was negligent by failing to have sufficient security policies in place at the naval hospital and by contracting with CasePro to provide healthcare services. However, the court denies the motion to the extent Delaney alleges that naval hospital employees failed to comply with policies and procedures already in place.

### B.    Exhaustion of Administrative Remedies

Finally, the government argues that the court lacks jurisdiction over Delaney's negligent credentialing and negligent hiring claims as they relate to Dr. Jansen because she did not adequately raise them in her administrative claim. Gov't's Mot. 21.

The FTCA requires that, prior to bringing an action against the United States, a plaintiff "shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). "It is well-settled that the requirement of filing an administrative claim

is jurisdictional and may not be waived." Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986). Regulations provide that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." 28 C.F.R. § 14.2(a). The Fourth Circuit has held that § 2675(a) and § 14.2(a) "require two elements for sufficient presentment of a claim to an agency: (1) written notice sufficient to cause the agency to investigate, and (2) a sum-certain value on the claim." Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994); see also Murrey v. United States, 73 F.3d 1448, 1452 (7th Cir. 1996) ("But as no statement of legal theories is required [on Standard Form 95], only facts plus a demand for money, the claim encompasses any cause of action fairly implicit in the facts.").

Delaney's Standard Form 95 includes an attachment which contains two paragraphs with an abbreviated version of the background laid out above. Gov't's Mot. Ex. 6. In similar circumstances, a Colorado district court determined that the plaintiff had not properly exhausted his negligent credentialing claim. The court held that "the 'facts and circumstances' of which plaintiffs gave notice to the government via the administrative claim, which again focused on actions relating to [the plaintiff's] treatment during a surgical procedure on a specific date, are simply not those that would put the government on notice to investigate the [hospital's] failures in credentialing Dr. Slover or monitoring her competency." Bethel v. United States, 495 F. Supp. 2d 1121, 1124 (D. Colo. 2007). The court analogized Bethel to a Tenth Circuit case in which the court "held that a prisoner failed to exhaust administrative remedies with respect to his claim

10

under the FTCA for 'negligent failure to provide adequate training and supervision to staff' because his administrative claim, which alleged that he received negligent care while ill, 'fail[ed] to mention the possibility that his injuries were caused by the inadequate training and supervision of [prison] staff.'" Id. (citing Kikumura v. Osagie, 461 F.3d 1269, 1302 (10th Cir. 2006)).

Nothing in Delaney's administrative complaint would put the government on notice to investigate the naval hospital's failures in credentialing Dr. Jansen. Therefore, the court grants the government's motion and dismisses Delaney's complaint to the extent it alleges that the government negligently hired and credentialed Dr. Jansen.

## IV.  CONCLUSION

For the foregoing reasons, the court **GRANTS** the government's motion to dismiss for lack of subject matter jurisdiction in part and **DISMISSES** Delaney's claims to the extent they allege that the government was negligent by:  failing to have sufficient security policies in place at the naval hospital; contracting with CasePro to provide healthcare services; and hiring and credentialing Dr. Jansen.  The court **DENIES** the government's motion to dismiss for lack of subject matter jurisdiction in all other respects.

Additionally, the court **DENIES** the government's motion to dismiss for failure to state a claim without prejudice.  Because the parties discuss matters outside the pleadings, that motion is more properly considered as a motion for summary judgment once discovery has been completed.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**July 28, 2015
Charleston, South Carolina**