IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| REBECCA DELANEY, *as personal representative of the Estate of Justin Nicholas Miller*, | ) ) ) ) | |
| | ) | No. 9:14-cv-03421-DCN |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

This matter is before the court on a motion for summary judgment filed by defendant the United States of America ("government"). For the reasons set forth below, the court grants the government's motion.

## I. BACKGROUND

On February 24, 2012, Kalvin Hunt ("Hunt"), a Marine on involuntary leave while appealing his dishonorable discharge, was accompanied to the Beaufort Naval Hospital ("US Naval Hospital") by Edward Ray ("Ray"), an employee of the Beaufort County Office of Veteran's Affairs.[1] When Hunt and Ray arrived at the naval hospital, Nurse Saundra Smith ("Smith") came to offer assistance and meet with Hunt. While Smith was in the process of interviewing Hunt and scheduling an appointment for him to see a doctor the following Monday, Hunt began to rock back and forth in his chair and let out an exasperated kind of moan. When Smith asked Hunt if he wanted to hurt himself, he said that he did. At that time, Smith took Hunt and Ray to the emergency department.

---

[1] Ray is now deceased.

1

Once in the emergency department, Hunt first saw triage nurse Janice McDonald ("Janice"). When Janice asked Hunt whether he had thoughts about hurting himself, he responded that he did, although he had no plan to hurt himself at that time. Janice informed Hunt that he would be evaluated by a psychiatrist and, depending on her judgment, a decision would be made whether to admit him. Janice turned Hunt over to her husband Joe McDonald ("Joe"), who is also a registered nurse in the emergency department. Joe accompanied Hunt to be evaluated by Dr. Christian Jansen ("Dr. Jansen"). Dr. Jansen noted that while Hunt had suicidal thoughts and thoughts of hurting others, he had no specific plans. At that time, Dr. Jansen called for a psychiatric technician from the US Naval Hospital's mental health unit to evaluate Hunt.

Arthur Manning ("Manning"), a psychiatric technician, evaluated Hunt and recommended that Hunt be admitted. The on-duty psychiatrist, Dr. Beverly Hendelman ("Dr. Hendelman"), accepted the recommendation and made the decision to hospitalize Hunt. Dr. Hendelman then relayed her decision to Dr. Jansen. The plan was to admit Hunt to nearby Beaufort Memorial Hospital because the US Naval Hospital did not provide in-patient mental health treatment.

About the time that Dr. Jansen was in the process of determining bed availability at Beaufort Memorial Hospital, Ray asked Joe if he and Hunt could go outside for some fresh air, and Joe said that they could. Once outside, Hunt removed some items of clothing and ran towards the front gate. A security guard saw Hunt running but did not stop him. Ray attempted to pursue Hunt, but was unable to catch him. Ray approached the front gate and described the events that had just occurred to a group of security

guards. A security guard called the Beaufort County Sheriff's Department to report the incident.

At the same time, the Town of Port Royal Fire Department was responding to an emergency call at a nearby apartment complex. Hunt got into a still-running and unattended fire truck and began driving it down Ribaut Road at high speed. Hunt collided with several cars and struck and killed pedestrian Justin Miller.

On August 22, 2014, plaintiff Rebecca Delaney ("Delaney") filed this suit as personal representative of Justin Miller's estate. Delaney brings causes of action against the government for negligence under the Federal Tort Claims Act ("FTCA").[2] On February 10, 2017, the government filed a motion for summary judgment on all of Delaney's claims. Delaney responded on February 23, 2017, and the government filed a reply on March 2nd, 2017. This matter has been fully briefed and is now ripe for the court's review.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that

---

[2] Delaney's complaint names the United States Naval Hospital as a defendant. However, federal agencies cannot be sued under the FTCA. See Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms, 807 F. Supp. 2d 362, 369 (D. Md. 2011); 28 U.S.C. § 2679. Therefore, the court substitutes the United States as the defendant for all causes of action asserted against the United States Naval Hospital.

a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., No. 6:12-cv-183, 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

### III. DISCUSSION

The government moves for summary judgment on all of Delaney's claims.[3] Gov.'s Mot. 1. Although somewhat muddled, the government appears to be arguing that

---

[3] Alternatively, the government asks the court to grant partial summary judgment on Delaney's second cause of action which asserts negligence claims against the military personnel who were guarding the gate of the U.S. Naval Hospital. Gov.'s Mot. 1. In her response, Delaney abandons count II of her complaint. Pl.'s Resp. 1. The court strikes those allegations in Delaney's complaint, and does not analyze them further.

4

Delaney has not met the requirements for expert testimony outlined in S.C. Code Ann. § 15-79-125, and that even if Delaney had fulfilled that statutory requirement, the government owes no duty to Justin Miller under the FTCA.

The FTCA provides "for 'a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.'" Wood v. Standard Prods. Co., Inc., 671 F.2d 825, 829 (4th Cir. 1982) (quoting United States v. Orleans, 425 U.S. 807, 813 (1976)); 28 U.S.C. § 1346(b). Since Delaney has brought this action under the FTCA, she must establish the government's liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Cantrell v. United States, 735 F. Supp. 670, 672 (E.D.N.C. 1988). The FTCA does not create new causes of action, and "only serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." Goldstar (Panama) SA. v. United States, 967 F.2d 965, 969 (4th Cir. 1992); Rayonier, Inc. v. United States, 352 U.S. 315, 319 (1957). In other words, the issue before the court is whether a private person could be held liable in South Carolina if he committed the acts alleged in the complaint to have been committed by the government agents, under the same or similar circumstances.

### 1. S.C. Code Ann. § 15-79-125 Requirements for Medical Negligence Claims

The government's motion raises the important threshold question of whether Delaney's cause of action sounds in medical malpractice or ordinary negligence. In South Carolina, S.C. Code Ann. § 15-79-125 provides that a medical malpractice action

5

requires expert testimony to establish the duty owed to a patient and the breach of that duty, unless the "subject matter of the claim falls within a layman's common knowledge or experience." Dawkins v. Union Hosp. Dist., 758 S.E.2d 501, 504 (S.C. 2014). The complaint states that "this claim is not brought pursuant to 10 U.S.C. § 1089 and does not allege acts of medical negligence," compl. ¶ 45, and Delaney contends that she has alleged "negligent acts and omissions that are separate and distinct from those alleging medical malpractice." Pl.'s Mot. 7. The government argues that despite the wording of the complaint, Denaley is attempting to bring a claim in medical negligence as opposed to general negligence. Def.'s Mot. 14. The court agrees. While not every cause of action against a medical provider is for medical malpractice, the complaint makes clear that Delaney is alleging that the medical providers at the US Naval Hospital had specific duties that were inseparably intertwined with their role as medical professionals—not as laymen. Without fulfilling the requirements of S.C. Code Ann. § 15-79-125, which she has not, Delaney's negligence claim fails.[4]

In Dawkins, the most recent South Carolina Supreme Court case addressing the expert affidavit requirement of S.C. Code Ann. § 15-79-125, the court emphasized that if the patient receives "allegedly negligent professional medical care" then expert testimony on the standard of the type of care is necessary, but if the patient receives "nonmedical, administrative, ministerial, or routine care," then it is an ordinary negligence action that does not require any expert testimony. Dawkins, 758 S.E.2d at 504. In this case, the

---

[4] Delaney's second cause of action alleging negligence against the sentries and security personnel stationed at the entrances of the US Naval Hospital at the time of Hunt's elopement would not require compliance with S.C. Code Ann. § 15-79-125, as this cause of action is an ordinary negligence cause of action. However, in her response Delaney abandons this count of her complaint. Pl.'s Resp. 1.

court finds that this is a medical malpractice claim masquerading as an ordinary negligence claim.

Of course, medical providers are still subject to ordinary negligence claims—the simple fact that an incident occurred in a hospital and involved medical professionals does not automatically make it a medical malpractice claim. The <u>Dawkins</u> court discussed cases from a number of jurisdictions in reaching this conclusion. For example, a patient's claim against a hospital was an ordinary negligence claim when the hospital served the patient a turkey sandwich infected with salmonella. Similarly, a patient's slip-and-fall claim against a hospital was an ordinary negligence claim when the patient slipped in a puddle of water in the hospital restroom. <u>Dawkins</u>, 758 S.E.2d at 504 n. 2 (summarizing cases). The <u>Dawkins</u> court also explained that claims against a hospital for injuries caused by falling ceiling tiles or improperly maintained hallways or parking lots were ordinary negligence claims. <u>Id.</u> at 504. The differentiation of ordinary negligence and medical malpractice claims is "subtle" and "depends heavily on the facts of each individual case." <u>Id.</u> Here, despite the wording in the complaint that her negligence claim "does not allege acts of medical negligence," Delaney asserts that defendant's duties included "recognizing signs that an individual may hurt others and ensuring appropriate action is taken," "[s]creening potential patients to determine whether treatment should be provided," "instituting precautionary measures to prevent injuries to patients or others due to suicide, homicide, or elopement," "[i]ntervening as crisis counselors in situations requiring immediate psychological treatment such as substance abuse, suicide attempts, psychotic episodes, and other instances." Compl. ¶¶ 47(ii)-(vi). Delaney's claim is not a slip-and-fall that happened to occur within the confines of a

hospital or the consumption of a sandwich from the hospital cafeteria, the types of ordinary negligence claims that the Dawkins court differentiated from medical malpractice claims. Instead, it rests on the specialized knowledge that medical professionals practicing mental health care possess about screening patients for serious mental health issues and the need for implementing precautionary measures that may be guided by those mental health issues.

Although it requires parsing out the specific timeline of facts on the day of the accident—some of which is disputed between the parties—a review of the facts demonstrates that Hunt had begun receiving medical care at the time of his elopement. Before his elopement, Hunt had seen a triage nurse, Janice, who screened Hunt's medical chart to determine that Hunt had "suicidal ideations" and advised Hunt that he would be evaluated by a psychiatrist and possible admitted to a hospital. Pl.'s Resp. 3. Joe then turned Hunt over to be evaluated by Dr. Christian Jansen, an emergency room physician who noted that Hunt revealed thoughts of hurting other people. Pl.'s Resp. 3. Dr. Jansen then requested that a military psych technician conduct a mental evaluation of Hunt. The psych technician evaluated Hunt and recommended that Hunt be admitted to the on-duty psychiatrist, Dr. Beverly Hendelman. Pl.'s Resp. 4. Dr. Hendelman was informed by phone that Hunt needed to be admitted. Pl.'s Resp. 4. It was at this point, more than two hours after Hunt first entered US Naval Hospital and after being seen by multiple medical professionals, that Hunt fled from the hospital and jumped into an unattended fire truck

and drove it out onto a road adjacent to the US Naval Hospital, striking and killing Justin Miller with the fire truck. These facts fall squarely within a medical negligence claim.[5]

In sum, the court grants the government's summary judgment because Delaney has failed to produce expert testimony to show that the government breached an established duty of care. For a medical malpractice action, a plaintiff must produce expert testimony in order to establish duty and that expert testimony should demonstrate "(1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the [practitioner's] field of medicine under the same or similar circumstances, and (2) that the [practitioner] departed from the recognized and generally accepted standards." Melton v. Medtronic, Inc., 698 S.E.2d 886, 893 (S.C. Ct. App. 2010). Delaney has produced no expert testimony about the duty of care that medical providers owe a mental health patient with suicidal tendencies who asks to step outside for "some air," let alone the duty that medical providers owe to the general public in the vicinity of a mental health patient with suicidal tendencies. Indeed, Delaney has produced no expert testimony at all. As the court discusses above, a review of the complaint demonstrates that Delaney's claims against the US Naval Hospital and its employees for their actions relating to Hunt's care sound in medical malpractice as

---

[5] It is unclear why the government did not raise the medical negligence argument under S.C. Code Ann. § 15-79-125 at the motion to dismiss stage, which is the stage for which this argument is better suited. In its 31-page memorandum supporting its motion to dismiss, the government argues at some length that there is no subject matter jurisdiction because Delaney claims that this is not a medical malpractice case under 10 § U.S.C. 1089. ECF No. 14 at 22. At no point does the government discuss the notice of intent and expert affidavit requirements of S.C. Code Ann. § 15-79-125. Since it's hard to believe that the government just discovered this statute, the court fails to see why this argument was not brought up at the motion to dismiss stage. Although it seems unfair that the government is bringing up the S.C. Code Ann. § 15-79-125 argument now, after both parties have finished discovery and the case is ready for trial, the court must dismiss the remaining cause of action in the complaint.

opposed to ordinary negligence.[6] Accordingly, Delaney is required to comply with the notice of intent and expert affidavit requirements found in S.C. Code Ann. § 15-79-125. Delaney has failed to do so, and so her remaining claim for negligence against US Naval Hospital must fail. Therefore, the court grants the government's motion for summary judgment.

### 2. Duty

As an alternative basis for granting summary judgment, the government argues that the medical providers in the US Naval Hospital owed decedent Justin Miller no duty of care.[7]

"To prevail in an action founded in negligence, the plaintiff must establish three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty." Vinson v. Hartley, 477 S.E.2d 715, 720 (S.C. Ct. App. 1996). While the question of breach of duty is a factual question best left for the jury, "[w]hether the law recognizes a particular duty is an issue of law to be determined by the court." Jackson v. Swordfish Inv., L.L.C., 620 S.E.2d 54, 56 (S.C. 2005) (citation omitted). South Carolina does not recognize a general duty to warn of the dangerous propensities of others. Sharpe v. S.C. Dep't of Mental Health, 354 S.E.2d 778 (S.C. Ct. App. 1987),

---

[6] If it looks like a malpractice case, swims like a malpractice case, and quacks like a malpractice case—despite artful pleading by the plaintiff—it is probably a malpractice case.

[7] Even if there were a duty, the government contends, the duty of care was not established from the US Naval Hospital's internal policies and procedures outlining the proper protocol in handling patients who demonstrated signs of self-harm and harm to others. Gov.'s Mot. 11–20. The court finds that the US Naval Hospital did not owe Justin Miller a duty as a matter of law, and so it does not go into the analysis of whether internal policies established the duty.

cert. dismissed, 366 S.E.2d 12 (S.C. 1988). Delaney argues that the government owed Justin Miller a legal duty, and cites Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 82 (S.C. 1998), and Hardee v. Bio-Med. Applications of S.C., Inc., 636 S.E.2d 629 (S.C. 2006), for the proposition that a reasonably foreseeable third party who is harmed by a patient's actions may maintain a cause of action for negligence against a medical provider. Pl.'s Resp. 7.

It is true that, in very limited circumstances, a reasonably foreseeable third party can maintain a suit against a medical provider for negligence.[8] That being said, a review of the facts in Bishop and Hardee demonstrates just how limited those circumstances are. In Bishop, following a grandmother's involuntary commitment of the mother of the victim child, the South Carolina Department of Mental Health determined that the victim's mother was not mentally ill and released her. The next day, the mother arrived at the grandmother's home and physically abused the victim child. The grandmother then brought a negligence action against the South Carolina Department of Mental Health, contending that the child was a foreseeable third party, and that the Department of Mental Health owed a duty to the child to properly diagnose and treat the mother. See Bishop, 502 S.E.2d at 80. While the Bishop court recognized the possibility that a reasonably foreseeable third party could bring a claim against a medical provider under certain circumstances, it ultimately held that the Department of Mental Health's duty to properly

---

[8] While the court makes no finding on this issue, it does make note of the government's argument that Justin Miller is not even a foreseeable third party, given the intervening event of Hunt stealing a fire truck—idling nearby with the keys still in the engine—and driving some ways before running Miller over. Every freshman law student is required to take Torts. On the first day of Torts, every law student has to be prepared to discuss then-Chief Judge Benjamin Cardozo's decision in Palsgraf v. Long Island R. Co., 162 N.E. 99 (N.Y. 1928). This case is reminiscent of the factual situation in Palsgraf. Alas, this court has never, and will never, be confused with Justice Cardozo.

diagnose and treat was owed only to the mother, and not to the child.  See id. at 84.  The next time that the South Carolina Supreme Court revisited the duty owed to a foreseeable third-party was in Hardee.  In Hardee, the court held that where a dialysis clinic knew that a patient could experience ill effects related to insulin shock, and that the patient was suffering from low blood sugar following his dialysis treatment, the dialysis clinic owed a duty to persons in the "general field of danger"—which the court interpreted to be the "motoring public"—to warn the patient of the risks of operating a motor vehicle.  Hardee, 636 S.E.2d at 631.

Delaney asks the court to interpret Bishop and Hardee as supporting the proposition that the US Naval Hospital had a legal duty to keep Hunt safe—even though he was voluntarily committing himself to undergo a mental health evaluation—and that this duty extends to Justin Miller, a pedestrian who Hunt ran over with a stolen fire truck.  This seems to be a rather expansive interpretation of Hardee, which emphasized that its recognition of a medical provider's duty to a foreseeable third party was a "very narrow holding."  Hardee, 636 S.E.2d at 632.  Oblachinski v. Reynolds, 706 S.E.2d 844 (S.C. 2011) is the sole post-Hardee South Carolina Supreme Court case, and illustrates just how cautious the South Carolina courts have been to extend the legal duty owed by a provider to a non-patient third party.  In Oblachinski, the South Carolina Supreme Court interpreted Hardee narrowly and held where a doctor misdiagnosed a girl as being sexually abused, and based on this misdiagnosis a third-party was then accused of sexual abuse, the doctor did not owe a duty of care to the third party accused of sexual abuse.  The court finds Oblachinski to offer guidance on just how cautious the South Carolina courts have been to extend the legal duty owed by a provider to a non-patient third party.

12

As discussed, South Carolina case law limits situations where a non-patient third party can bring a medical negligence suit against a medical provider, and these facts do not appear to fall within the recognized exception created by Bishop and Hardee to the general rule. In such a relatively undeveloped area of law—and especially given how cautious South Carolina courts have been to extend the legal duty to a non-patient third party—the court is hesitant to make an "Erie guess"[9] that the South Carolina Supreme Court would find that US Naval Hospital owed a duty to Justin Miller.[10] Accordingly, as an additional ground for granting the government's summary judgment motion the court finds that the US Naval Hospital did not owe Justin Miller a duty as a matter of law.

---

[9] Where there is no guidance in the state's tort law regime regarding whether a cause of action would be recognized under the facts of this case, the court must make an "Erie guess" as to whether a potential cause of action exists. See Highlands Ins. Co. v. Hobbs Group, LLC, 373 F.3d 347, 351 (3d Cir. 2004) (noting that where a state's highest court had not squarely addressed whether a legal duty exists under the particular circumstances of the case, "under Erie principles [federal courts applying state law] must predict whether that court would recognize such a duty under the circumstances presented"). In doing so, "the federal court may consider a wide range of reliable sources, including relevant state precedents, analogous decisions and reasoned dicta, as well as the policies and doctrinal trends informing and emerging from those decisions." Id. at 351 (internal citations omitted).

[10] The court offers this argument as an alternative basis to grant the summary judgment motion. As explained in III.2, the court also grants the motion based on Delaney's failure to produce expert testimony to show that the government breached an established duty of care as required by S.C. Code Ann. § 15-79-125.

## IV.  CONCLUSION

For the foregoing reasons, the court **GRANTS** the government's motion for summary judgment.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 24, 2017**
**Charleston, South Carolina**